IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-43

No. 271A20

Filed 23 April 2021

IN THE MATTER OF: A.R.W., H.N.W., and S.L.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered 12 March 2020 by Judge Monica M. Bousman in District Court, Wake County. This matter was calendared for argument in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Robin E. Strickland for petitioner-appellees.*

*Leslie Rawls for respondent-appellant father.*

NEWBY, Chief Justice.

¶ 1          Respondent, the biological father of the minor children, A.R.W. (Amy), H.N.W. (Hazel), and S.L.W. (Susan)[1], appeals from the trial court's order terminating his parental rights. Counsel for respondent has filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude the issues identified by counsel in respondent's brief are meritless and therefore affirm the trial court's order.

---

[1] Pseudonyms are used for ease of reading and to protect the juveniles' identities.

¶ 2        This is a private termination of parental rights action filed by the children's legal custodians, Mr. and Mrs. W (petitioners). On 20 December 2013, Wake County Human Services (WCHS) filed a petition alleging that Amy and Hazel were neglected and dependent juveniles. The petition alleged that on or about 12 March 2013, WCHS received a report that respondent assaulted the mother in the presence of the children. Respondent was "reported to have kicked and choked [the mother] and pulled her out of the car by her hair." The mother entered into a Safety Plan placing the children in the maternal great-grandmother's home.

¶ 3        On 28 January 2014, respondent consented to the entry of an order adjudicating Amy and Hazel to be neglected juveniles based on their living in an injurious environment due to the parents' domestic violence and substance abuse issues. The trial court ordered respondent to enter into and comply with an Out of Home Services Agreement to address the reasons for the children's removal. The trial court ordered respondent to have one hour of supervised visitation every other week.

¶ 4        Following a hearing on 21 April 2014, the trial court entered an order adopting a permanent plan of reunification.

¶ 5        On 25 September 2014, when the mother was eight months pregnant with Susan, she reported that respondent abducted, assaulted, and raped her at gunpoint. Respondent later pled guilty to first-degree kidnapping and is currently serving a sentence of a minimum of eight years to a maximum of ten years, eight months in

custody. His projected release date is 23 September 2022.

¶ 6      In September 2014, Amy and Hazel were removed from the maternal great-grandmother's home due to her poor health, and they were placed with petitioners, who are licensed foster parents. Subsequently, the trial court suspended respondent's visitation on 14 November 2014. The trial court found that respondent was not in compliance with his Out of Home Services Agreement. On 5 February 2015, the trial court ceased reunification efforts with respondent.

¶ 7      In March 2015, Amy and Hazel were returned to the mother's home. Petitioners visited with Amy and Hazel "from time to time" and provided childcare when requested by the mother. On 21 September 2016, the mother passed away from an apparent heroin overdose. Following the mother's death, Amy, Hazel, and Susan went to live with the maternal great-grandmother until November 2016, when she was admitted to the hospital. Thereafter, petitioners assumed fulltime care of all three children. The children have resided with petitioners since November 2016.

¶ 8      The maternal grandfather and his wife filed a complaint for custody of the children in District Court, Wake County, and petitioners intervened. On 27 February 2017, the trial court entered a Temporary Custody Order granting petitioners temporary physical and legal custody of the children. Following a hearing on 27 November 2017, the trial court entered an order on 17 May 2018 granting petitioners permanent physical and legal custody of the children. Nevertheless, petitioners and

the children have maintained relationships with the maternal grandparents.

On 12 July 2019, petitioners filed petitions to terminate respondent's parental rights to the children alleging the grounds of neglect, willfully leaving the children in a placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to their removal, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1)–(2), (7) (2019). Following a hearing held on 13 February 2020, the trial court entered an order on 12 March 2020 terminating respondent's parental rights. The trial court concluded grounds existed to terminate his parental rights based on the grounds of neglect and willful failure to make reasonable progress. The court noted that despite the earlier order requiring respondent to demonstrate changes learned relating to domestic violence, to resolve criminal matters, and to be of lawful behavior, respondent was found guilty of multiple infractions during his incarceration. These infractions included gang behavior, assault on staff, possessing a weapon, and coordinating an assault. The trial court further concluded it was in the children's best interests that respondent's parental rights be terminated. *See* N.C.G.S. § 7B-1110(a) (2019). Respondent appealed from the termination order.

Counsel for respondent has filed a no-merit brief on respondent's behalf under Rule 3.1(e) of the Rules of Appellate Procedure. In her brief, counsel identified four issues that could arguably support an appeal but also explained why she believed

these issues lacked merit. Counsel also advised respondent of his right to file *pro se* written arguments on his own behalf and provided him with the documents necessary to do so. Respondent filed a *pro se* brief asking this Court to reverse the trial court order terminating his parental rights and reiterating some of his testimony at the termination hearing. Specifically, respondent stated that he loves his children, he took classes while incarcerated to become a better parent and person, he wrote and called his children while he was incarcerated, petitioners hung up the phone when he tried to call the children the last time, and he has been incarcerated for most of the children's lives. Respondent noted his aunt as a potential caregiver for the children, an argument that the trial court previously considered at length and rejected in its order. Respondent did not, however, present any reviewable legal arguments in his brief.

We independently review issues identified by counsel in a no-merit brief filed pursuant to Rule 3.1(e). *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). After considering the entire record and respondent's *pro se* brief and reviewing the issues identified in the no-merit brief, we conclude that the 12 March 2020 order is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.